## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

**SUZETTE ARCHIE**
2359 Jones Lane
Silver Spring, MD  20902

*Individually and on behalf of three classes*
*of similarly situated persons*

      Plaintiff

*v.*                                      Case No: ___V43351X___

**NAGLE & ZALLER, P.C.**
7226 Lee DeForest Drive
Suite 102
Columbia, MD 21046
<u>SERVE ON:</u>
P. Michael Nagle, Resident Agent
7226 Lee DeForest Drive
Columbia, MD  21046



RECEIVED

**JUN 1 4 2017**

Clerk of the Circuit Court
Montgomery County, Md.

      Defendant

### CLASS ACTION COMPLAINT
### &
### DEMAND FOR JURY TRIAL

    Plaintiff Suzette Archie ("**Named Plaintiff**" or "**Ms. Archie**"), individually and on behalf of three Classes of similarly situated persons, through her attorneys Phillip R. Robinson of the Consumer Law Center LLC hereby bring this Class Action Complaint and Demand for Jury Trial against Defendant Nagle & Zaller, P.C. ("**Defendant**" or "**N&Z**") and in support thereof state:

### I. INTRODUCTION

1.    When the District Court of Maryland for Prince George's County entered

judgment in favor of the Council of Unit Owners for the Holly Hill Condominium ("Holly Hill") against Suzette Archie in 2012, the court awarded costs in the amount of $83.00. Yet, when Holly Hill later attempted to garnish Named Plaintiff's wages related to the same judgment, it submitted to the court a Request for Writ of Garnishment of Wages in which it stated that the amount of "court costs due, including this Writ" was $118.00; not the $83.00 that was actually entered plus the $10.00 authorized by law for the issuance of the Writ.[1] N&Z filed the request for the Writ.

2.      Knowing that Ms. Archie no longer resided in Prince Georges County and was in fact a resident of Montgomery County and no longer legally owed her former condominium in Prince George's County, N&Z filed suit on behalf of Holly Hill in 2016 against Ms. Archie in Prince George's County.

3.      Finally, without the right to do so, N&Z, acting on behalf of Holly Hill, recorded a State of Lien in the land records for Prince George's County in 2016 which sought sums from Ms. Archie that might have come due in the future.

4.      In this lawsuit, the Named Plaintiff challenges certain debt collection practices utilized by the Defendant during it collection practices pre- and post-judgment collection efforts in Maryland.  Specifically, the Defendant

    (i)     Pads and inflates the amount claimed and collected as "costs" in the Writs of garnishment that it submits to the court and serves upon banks and

_____

[1] At all times relevant to this Complaint, the District Court of Maryland charged a filing fee of $10.00 for a Request for Writ of Garnishment of Wages.  At all relevant times the District Court of Maryland charged a filing fee of $10.00 for a Request for Writ of Garnishment Other Than Wages.

employers of the Named Plaintiff and the Garnishment Class of persons similarly situated whom she seeks to represent. These padded and inflated costs are also communicated directly or indirectly to the members of the Garnishment Class, and are more than the amount that is permitted by law. In seeking and collecting amounts that are not legally owed, the Defendant violates federal and state debt collection and consumer protection statutes;

(ii)    Sues consumers, including the Named Plaintiff and members of the Improper Jurisdiction Class, where it knows it does not have a right to due them; and

(iii)   Records in the land records Statements of Lien against the real property of homeowners in contravention of the Maryland Contract Lien Act, including the Named Plaintiff and members of the Lien Class, alleging that consumers owe some undetermined, future sums which are not specifically accounted for on the Statement of Lien. *See e.g.* Real Prop. 14-203(b)(5).

5.    In Maryland, a judgment creditor is only permitted to collect by garnishment the "costs actually assessed in the cause." COM. LAW § 15-605(c). If a judgment creditor wishes to collect post-judgment costs, it must reserve that right to future costs at the time of judgment. *SunTrust Bank v. Goldman*, 201 Md. App. 390, 406-07 (2011)(adopting "the general rule that costs of collection are not recoverable absent a statute or public policy providing for such recovery").

6.    In Maryland and under the Fair Debt Collection Practices Act, a collector is not permitted to sue a consumer in a District Court jurisdiction where the consumer does not

reside or is domiciled.   15 U.S.C.A. § 1692i; Cts. & Jud. Proc. § 6-102.

7.      Further, while the Maryland Contract Lien Act ("MCLA") permits the filing of Lien against real property as a form of collection activities, it limits the right to so to specific "'Damages' [defined to] mean[] unpaid sums due under a contract, plus interest accruing on the unpaid sums due under a contract or as provided by law, including fines levied under the Maryland Condominium Act or the Maryland Real Estate Time-Sharing Act." Real Prop. § 14-201(c)(1). *See also* Real Prop. § 14-202(b) ("A lien may only secure the payment of: (1) Damages; (2) Costs of collection; (3) Late charges permitted by law; and (4) Attorney's fees provided for in a contract or awarded by a court for breach of a contract").  MCLA does not permit undetermined sums which may (or may not) become due in the future. *Id. See also* Real Prop. 14-203(b)(5).

8.      The specific practices challenged in this lawsuit relate to the fact that the Defendant illegally inflates and pads the "costs" it claims when it submits writs of garnishment to Maryland courts.  Those inflated and padded "costs" are then approved by unsuspecting courts, and served directly or indirectly on the Named Plaintiff and the members of the Garnishment Class, some of whom paid the illegally inflated and padded "costs."

9.      In addition, the specific practices challenged in this lawsuit related to the Defendant's improper practice of (i) suing consumers, like the Named Plaintiff, in jurisdictions it knows that they are not domiciled or reside and (ii) recording liens against real property which are not legally authorized under the MCLA.

10.     The Named Plaintiff seeks Declaratory Judgment and Injunctive Relief, as well as actual and statutory damages for violations of the federal and Maryland state consumer debt collection statutes.  The challenged garnishment, litigation in improper venues, and slander of title tactics constitute the kind of predatory and deceptive debt collection practices that Congress and our State have banned and which have garnered headlines over the past several years.  These predatory and deceptive debt collection practices have financially ensnared the Named Plaintiff and the putative class members she seeks to represent.  Because of the moneys which have been illegally garnished or otherwise sought by improper and unauthorized means, the Named Plaintiff and putative class members continue to suffer damage and losses directly and proximately caused by the unsafe, unsound, and extra-legal debt collection practices engaged in by the Defendant.

11.     Specifically, N&Z knowingly collected or attempted to collect inflated and bogus "costs" from Named Plaintiff the Garnishment Class members, under the color of law in writs of garnishment submitted to Maryland state courts.  The bogus and inflated "costs" were illegal because: (i) they were not approved in the original judgments entered against the Named Plaintiff and Garnishment Class members; and (ii) they exceeded the costs of the specific writ of garnishment — which is only $10.00.

12.     The inflated and illegal garnishment fees are imposed by the Defendant against Named Plaintiff and the Garnishment Class members, without any input or approval from the Maryland state courts.  Indeed, the state courts and reasonable persons do not anticipate that judgment creditors and their attorneys will "pad" or otherwise improperly and unfairly inflate the sums claimed due on requests for writs of garnishment.  Judgment

creditors and their debt collectors in Maryland have no right to pad the sums they seek through garnishment without prior court approval.

13.    By unfairly and deceptively aiding and assisting various collectors in the State of Maryland, as described herein, N&Z Firm unfairly and deceptively harmed consumers when it infected the consumer transactions of the putative class members and asserted rights through the state courts which the N&Z and its attorneys knew did not exist, resulting in financial and other harm to the Named Plaintiff and members of the putative classes.

14.    As a direct and proximate result of the N&Z's debt collection practices, Named Plaintiff and the putative class members have been damaged.

15.    The specific damages and harms that the Defendant caused include but are not limited to:

      a. the Defendant claimed in writs of garnishment that certain costs are due from Named Plaintiff and the Garnishment Class members, when in fact the costs claimed to be due are in excess of the costs actually awarded at judgment, and in excess of the actual cost of the writ of garnishment; the Defendant claimed, threaten, and seek sums, related to costs in excess of the sums actually awarded in the judgment, when the Defendant is not legally permitted to collect or even attempt to collect such padded "costs"; the Defendant added bogus fees and costs to the purported judgments against the Named Plaintiff and the putative Garnishment Class members which are not valid;

b. the Defendant recorded and filed documents in Maryland state courts, land records, and with third parties demanding payments of costs from the Named Plaintiff and Garnishment and Lien Class members not validly due from the Named Plaintiff and putative class members;

c. the Defendant used court documents and forms that wrongfully simulate legal or judicial process to collect inflated costs and sums from the Named Plaintiff and Garnishment and Lien Class members that were never authorized or approved by any court;

d. the Defendant sued and obtained judgments against the Named Plaintiff and Improper Jurisdiction Class members which are void; and

e. By imposing and collecting the bogus and illegal fees, the Defendant violated the statutory rights of the Named Plaintiff and the putative class members, which entitles them to statutory damages.

## II.  PARTIES

16.    Plaintiff Suzette Archie ("Named Plaintiff" or "Ms. Archie") is a resident of Montgomery County, Maryland, where the events which are related to her claims in this lawsuit occurred.

17.    Defendant Nagle & Zaller, P.C. ("Defendant" or "N&Z") is a Maryland law firm and collection agency that collects judgments in the Maryland courts entered on behalf of others like Holly Hill.

18.    The duties performed by N&Z on behalf of Holly Hill and other collectors include seeking garnishments on court forms in the state courts, filing collection lawsuits, and

causing Statements of Lien under MCLA to be recorded against residential, real property. N&Z knows or acts with reckless disregard of the fact that the costs and other sums it is seeking to collect upon are not permitted to be collected by the judgment or are in excess of the actual cost of the writ or sums incurred at the time of recording the Statement of Lien, it conceals such disclosure from the Named Plaintiff and the putative class members while making threats to utilize and actually utilizing Maryland state courts to accomplish its illegal scheme.

19.    At all times relevant to this lawsuit N&Z and its attorneys were aware that the "costs" sought in the garnishments were illegal inflated, the MCLA does not permit undetermined future sums to be included in recorded Statements of Lien, and it may not sue persons in jurisdictions where they are not domiciled. Further, at all times relevant to this lawsuit, N&Z knowingly collected and attempted to collect: (i) costs that were not actually awarded by the judgment on which they sought a garnishment; (ii) costs in excess of the actual costs of the writ of garnishment they are seeking to collect upon; (iii) future sums not yet owed but identified on Statements of Lien recorded in the land records of nearly every Maryland county where N&Z conducts its debt collection business; and (iv) by filing lawsuits against some persons in jurisdictions where they did not live or reside.

## III.  JURISDICTION & VENUE

20.    Declaratory relief is available pursuant to Md. Code Ann., §§ 3-401–3-415, and Rule 2-231 (b)(2).

21.    Venue in this Court in that the Defendant transacts business within Montgomery

County and in Montgomery County courts as part of its debt collection practices and includes the conduct complained of occurred in Montgomery County.

22.        This Court has equitable jurisdiction over the claims asserted herein. 9 M.L.E. Equity § 2.

23.      This Court has jurisdiction of this matter pursuant to Rule 2-231 in order to facilitate management of multiple similar claims.   Maryland law does not permit class actions to be maintained in the District Court of Maryland.

## IV. FACTS

### A.      Relevant and Material Background on N&Z

24.      N&Z is a law firm that practices throughout the State of Maryland and represents creditors against consumers including the Named Plaintiff and putative class members described herein.   N&Z is also a licensed Maryland collection agency (License No. 6368).

25.      As a matter of uniform and consistent practice, N&Z does not seek to preserve the right to collect post-judgment costs in excess of the costs awarded to their client as part of the judgments it obtains.

26.      N&Z and its attorneys are debt collectors as defined by 15 U.S.C. § 1692a(6).  *See also Henson v. Santander Consumer USA Inc.*, No. 16-349, --- S.Ct. ---- 2017 WL 2507342, at *3 (U.S. June 12, 2017)("the Act defines debt collectors to include those who regularly seek to collect debts 'owed ... another.' And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—

not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another'").

27.    N&Z and its attorneys are also collectors as defined by COM. LAW § 14-201(b).

28.    On behalf of various creditors, including Holly Hill, N&Z pursued more than 100 garnishments in the State of Maryland in the one year before the commencement of this action and more than 300 garnishments in the three years before the commencement of this action.

29.    N&Z regularly seeks in these garnishments, costs not actually assessed in the case — in other words, the costs it seeks costs in excess of the costs awarded at judgment.

30.    On behalf of various creditors, including Holly Hill, the N&Z prepared and recorded in the land records of various Maryland counties, including Montgomery County, more than 100 statements of lien in the last year that demanded certain unknown, future sums from Maryland consumers that were not legally due and owing and under the Maryland Contract Lien Act N&Z was not permitted to include unknown, future sums that may come due. *See e.g.* Real Prop. 14-203(b)(5). N&Z has recorded more than 300 similar statements of lien in the three years before the commencement of this matter.

31.    On behalf of various creditors, including Holly Hill, N&Z initiated, upon information and belief, more than 50 collection lawsuits against consumers in a jurisdiction where the consumer was not actually domiciled.

32.    Upon information and belief, based on its collection contracts and amount of collection actions filed by it in various state courts, N&Z's net worth is in excess of $30,000,000. This belief is based in part upon a sum N&Z previously agreed to in a prior FDCPA settlement concerning difference debt collection practices than are subject to this action. *See Castillo v. Nagle & Zaller, P.C.*, Case No. 1:12-cv-02338 (U.S.D.C. of Md.)(final judgment entered July 25, 2013).

### B.    Background on Judgment Costs and the Costs of Collection in Maryland

33.    Under Maryland law, a judgment creditor is permitted to pursue a wage or other garnishment from the judgment debtor. COM. LAW § 15-605; MD. RULES 3-645, 3-645.1, and 3-646.

34.    However, a judgment creditor is only permitted to collect by garnishment the "costs actually assessed in the cause." COM. LAW § 15-605(c). If a judgment creditor wishes to collect post-judgment costs, it must reserve that right to future costs at the time of judgment. *SunTrust Bank v. Goldman*, 201 Md. App. 390, 406-07 (2011)(adopting "the general rule that costs of collection are not recoverable absent a statute or public policy providing for such recovery").

35.    The garnishment forms used by the District Court of Maryland do permit a judgment creditor to seek costs associated with a particular Writ of Garnishment only. Plaintiffs do not concede there is any authority under Maryland law for this. In any event the cost of a particular Writ of Garnishment in the District Court is just $10.00 (http://mdcourts.gov/district/forms/acct/dca109.pdf).

36.    The forms provided by the District Court of Maryland (*e.g.,* DC-CV-060, DC-CV-065, *etc.*) provide spaces for a judgment creditor to insert certain amounts *that have been awarded by a court* (*e.g.,* judgment principal, interest, court costs, additional interest, and attorneys fees).  The fact that there is a space for such amounts does not provide a basis for a judgment creditor to insert any amount that the judgment creditor desires.

37.    A Writ of Garnishment is issued by the Clerk of the Maryland court when requested and is not pre-approved by the Court.  The clerks anticipate that when requesting a Writ, judgment creditors and their debt collectors will only seek sums that they are legally entitled to recover.  The clerks do not expect or anticipate or condone the facts that the Defendants illegally pad and inflate the "costs" listed in the Writs.

38.    To the extent that a judgment creditor incurs post-judgment costs that are not recoverable under Maryland law and the judgment creditor did not preserve its right to collect those at the time of judgment pursuant to *SunTrust Bank v. Goldman*, 201 Md. App. at 406-07, the judgment creditor's costs are absorbed into the post-judgment interest rate permitted to it under Maryland law.  That post-judgment interest rate is 10% per annum; considerably higher than the current rate of return on the S&P 500.

39.    A judgment creditor is not permitted to unfairly pad or increase the actual costs awarded to it as part of its judgment in excess of what the Court previously awarded in a specific request for a Writ; in the alternative a judgment creditor is not permitted to seek in a Writ of Garnishment a sum greater than the actual costs awarded to it as part of its judgment plus $10.00 for that particular Writ.

### C.    Background on Named Plaintiff

40.    On behalf of Holly Hill, N&Z sued Plaintiff in a consumer claim it filed the District Court of Maryland for Prince George's County, based upon a defaulted account (Case No. -50200344252011) (**"Archie State Court Lawsuit"**).

41.    At the time that it obtained the judgment against Ms. Archie in the Archie State Court Lawsuit, Holly Hill was represented by N&Z.

42.    Because the consumer credit account at issue in the Archie State Court Lawsuit was used solely for the family, personal, or household purposes, it was a "debt" within the meaning of the of the Fair Debt Collection Practices Act and a "consumer transaction" within the meaning of the Maryland Consumer Debt Collection Act.

43.    On May 22, 2012 Holly Hill, represented by N&Z obtained a consent judgment against Ms. Archie in the Archie State Court Lawsuit (*i.e.*, **"Archie Judgment"**). The Archie Judgment awarded Holly Hill the sum of $83 in costs.

44.    As part of its regular and routine practice, neither Holly Hill, nor N&Z on its behalf, requested the right to petition the state court for future collection costs as was its right pursuant to *SunTrust Bank v. Goldman*, 201 Md. App. at 406-07.

45.    On or about September 2, 2016, N&Z requested that the Clerk of the District Court of Maryland for Prince George's County issue a Writ of Garnishment of Wages on Ms. Archie's wages. In that request, N&Z represented that the sum of $118.00 in costs were owed by Ms. Archie on the Archie Judgment, even though the Archie Judgment awarded only $83.00 in costs, and even though the cost of the Writ was only $10.00. N&Z also misrepresented on the requested Writ that it had applied no credits to Ms.

Archie's account even though, as will be shown infra, Holly Hill had acquired Ms. Achie's $64,000 home previously on June 29, 2016 by virtue of a foreclosure sale. In addition N&Z represented to the District Court in its request for a Writ that it knew Ms. Archie was domiciled in Montgomery County at that time and not in Prince George's County (presumably because of the prior foreclosure sale).

46.    In reliance to Holly Hill's and N&Z's knowingly false representation as to the sums due on the Archie Judgment, including the inflated and padded sum identified as costs, the Clerk of the Clerk of the District Court of Maryland for Prince George's County issued the Writ of Garnishment to Ms. Archie's former employer.

47.    At no point did either Holly Hill or any of its counsel including N&Z, ever seek to modify the original Archie Judgment.

48.    On June 13, 2016, N&Z acting on behalf of Holly Hill caused two Statements of Lien to be recorded in the land records for Prince George's County, Maryland against Ms. Archie and her real property known as 7268 Donnell Place, Unit A4, District Heights, MD 20747 ("Archie Property"). *See* Book 38280, Page 76 and Book 38280, Page 79 ("Statements of Lien").

49.    Because the consumer credit account at issue in the recorded Statements of Lien was used solely for the family, personal, or household purposes, it was a "debt" within the meaning of the of the Fair Debt Collection Practices Act and a "consumer transaction" within the meaning of the Maryland Consumer Debt Collection Act.

50.    In the Statements of Lien prepared and recorded by N&Z on behalf of Holly Hill, N&Z asserted a right to collect from Ms. Archie unknown, future sums:

*The total amount due to satisfy this lien shall include additional fines, late fees, interest, costs of collection and attorney's fees actually incurred, if any, as permitted by the Association's governing documents, that may come due after the date this lien was drafted. Said amount may increase or decrease to account for intervening payments of some or all of the balance secured by this Statement of Lien, or due to judgments obtained against the above-named owner(s) for the same.

**The costs of collection and attorney's fees included in this lien are those amounts not directly related to the filing of the simultaneously filed lien.

Statement of Lien Recorded at Book 38280, Page 76.

*The total amount due to satisfy this lien shall include additional fines, late fees, interest, costs of collection and attorney's fees actually incurred, if any, as permitted by the Association's governing documents, that may come due after the date this lien was drafted. Said amount may increase or decrease to account for intervening payments of some or all of the balance secured by this Statement of Lien, or due to judgments obtained against the above-named owner(s) for the same.

Statement of Lien Recorded at Book 38280, Page 79.

51.    N&Z had no right to cause Statements of Lien asserted certain unknown sums to be due and owing from Ms. Archie in any recorded Statement of Lien.

52.    The Maryland Contract Lien Act and the Holly Hill governing documents do not permit N&Z or Holly Hill to assert any right in a recorded Statement of Lien to future, unknown sums.   *See e.g.* Holly Hill's December 15, 2014 Resolution of the Board of Directors of the Holly Hill Condominium, which upon information and belief was prepared by N&Z on its behalf, at ¶ 5 and states:

5. NOTICE OF INTENT TO CREATE LIEN AND ATTORNEY'S FEES: If an account is forwarded to the Condominium's attorney for collection, a Notice of Intent to Create a Lien will be forwarded to the delinquent Unit Owner by means of first class and certified or registered mail, return receipt requested to the Unit Owner's address on the Condominium's books or by personal delivery or as set forth in the Maryland Contract Lien Act. The Notice of Intent to Create a Lien will inform the delinquent Unit Owner of the amount of the outstanding balance, including all past due assessments, interest, costs of collection and all attorney's fees actually incurred. The Notice of Intent to Create a Lien will conform to the requirements of the Maryland Contract Lien Act and to all other applicable laws.

53.     On June 30, 2015, Holly Hill, while represented by N&Z, commenced foreclosure proceedings against Ms. Archie and the Archie Property in the Circuit Court for Prince George's County (Case. No. CAEF15-16858)("**Archie Foreclosure Action**"). Ms. Archie never appeared in the Archie Foreclosure Action whatsoever.

54.     Because the consumer credit account at issue in the Archie foreclosure Action was used solely for the family, personal, or household purposes, it was a "debt" within the meaning of the of the Fair Debt Collection Practices Act and a "consumer transaction" within the meaning of the Maryland Consumer Debt Collection Act.

55.     A foreclosure sale was conducted at the request of N&Z on June 29, 2016 at 9:30A.M. At the sale Holly Hill was the purchaser, highest bidder, and acquired the Archie Property, which was valued at approximately $60,000, for the sum of just $17,000. As of June 29, 2016 Holly Hill became the "'unit owner' [and] holder of equitable title [related to the former Archie Property], whose rights are virtually ironclad so long as [it] fulfills [its] obligations under the terms of the foreclosure." *Campbell v. Council of Unit Owners of Bayside Condo.*, 202 Md. App. 241, 250 (2011).

56.     As of June 29, 2016 Ms. Archie was entitled to legal possession of the property as

a former homeowner until (i) the foreclosure sale had been ratified, (ii) the Circuit Court had issued a Writ of Possession, and (iii) the Sheriff had scheduled and conducted a foreclosure eviction.    None of these events have occurred as of the filing of this Complaint.

57.    Knowing that Ms. Archie was not domiciled in Prince George's County and that Holly Hill had acquired the former Archie Property, valued at approximately $60,000 at the foreclosure sale that occurred a few months prior, Holly Hill filed a collection action against Ms. Archie in the District Court for Prince George's County on September 6, 2016 (Case No. 050200228952016)("**Second Archie State Court Lawsuit**").

58.    Because the consumer credit account at issue in the Second Archie State Court Lawsuit was used solely for the family, personal, or household purposes, it was a "debt" within the meaning of the of the Fair Debt Collection Practices Act and a "consumer transaction" within the meaning of the Maryland Consumer Debt Collection Act.

59.    N&Z knew Ms. Archie was not domiciled in Prince George's County when it filed the Second Archie State Court Lawsuit against her but it filed the suit in that jurisdiction anyway without the right to do so.

60.    As a result of N&Z improperly asserting a right on behalf of Holly Hill in the Second Archie State Court Lawsuit against Ms. Archie a default judgment was entered against Ms. Archie in the Second Archie State Court Lawsuit on November 7, 2016. N&Z has never sought to correct its knowing error and the erroneous judgment entered in the Second Archie State Court Lawsuit even though the members and principals at N&Z are members of the Bar, N&Z is a licensed collection agency, and as a result it has a duty

to correct its misrepresentation(s) to the District Court of Prince George's County.

61.    As a direct and proximate result of N&Z's unfair and deceptive acts and omissions discussed herein Ms. Archie has been damaged and suffered losses.  These include:

    a.  N&Z has added costs and fees to her account with Holly Hill for unnecessary legal services which are duplicative and unnecessary since Holly Hill acquired the Archie Property at foreclosure sale and the value of that property far exceeds any sums due from Ms. Archie.  In other words, N&Z's churning of unnecessary legal activities in these cir appears designed to bill Ms. Archie's account for work which it had no right to assert and therefore compound its claim for attorney fees and costs not authorized under the law and governing documents related to Holly Hill. N&Z's acts and omissions directly resulted of the illegally padded and inflated sums claimed by N&Z which they were not entitled to collect.

    b.  Noneconomic damages and losses manifested by worry, fear, and frustration that N&Z would continue to use the court system to attempt to collect sums it knows it had no legal right to collect and then to compound matters by refusing and failing to reimburse sums paid to it which it knows it had no legal right to retain.

    c.  Her statutory rights were violated, and she is therefore entitled to actual and statutory damages available pursuant to the claims asserted herein.

    **D.    THE DEFENDANT'S LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION**

62.    The Maryland Court of Appeals held that a professional who has no direct communication with a borrower nevertheless has a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in a real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).  This same duty of care applies to N&Z acting as (i) a collector under the Maryland Consumer Debt Collection Act, (ii) a debt collector under the Fair Debt Collection Practices Act, and (iii) collection agencies pursuant to the Maryland Collection Agency Licensing Act.

### E. Named Plaintiff's Class Allegations

63.     This action is brought on behalf of the Named Plaintiff and on behalf of three Classes defined under Md. Rule 2-231.

64.    Named Plaintiff proposes, as the definition of the "Garnishment Class," that it be defined as follows:

> All persons in the State of Maryland (1) with whom N&Z has communicated either directly or indirectly; (2) in the last three years; (3) for the purpose of collecting upon a judgment by the use of a Writ of Garnishment; and (4) from whom N&Z sought (either for itself or on behalf of its clients) costs in an amount greater than the costs actually assessed by the judgment.

65.    Named Plaintiff proposes, as the definition of the "Lien Class," that it be defined as follows:

> All persons in the State of Maryland (1) with whom N&Z has communicated either directly or indirectly; (2) in the last three years; (3) for the purpose of causing a Statement of Lien to be recorded in land records related to residential, real property on behalf of another; and (4) from whom

N&Z asserted a right (either for itself or on behalf of its clients) for certain unknown, future sums as part of the recorded Statement of Lien.

66.    Named Plaintiff proposes, as the definition of the " Improper Jurisdiction Class," that it be defined as follows:

All persons in the State of Maryland (1) with whom N&Z has communicated either directly or indirectly; (2) in the last three years; (3) for the purpose of initiating a collection lawsuit against the person in a jurisdiction where the person was not domiciled; and (4) N&Z has no right to pursue the action in that during such circumstances.

67.    The particular members of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class are capable of being described without managerial or administrative difficulty. The members of each putative class are also readily identifiable from each of the Defendant's business records, and from public records.

68.    Upon information and belief, the size of each class exceeds more than a hundred persons. The members of each of the three proposed Classes are sufficiently numerous that individual joinder of all members is impractical. This allegation is based in part on the fact that, according to public records including Maryland Judiciary Case Search, the Defendant has appeared in literally thousands of collection actions related to consumer claims throughout the State of Maryland.

69.    According to public records including Maryland Judiciary Case Search, the Defendant has attempted and/or actually utilized the collection tools of the state courts, including requests for writs of garnishment, filing statements of lien, and collection lawsuits to collect from the members of each of the three proposed Classes.

70.    There are questions of law and fact common to the Garnishment Class, the Lien

Class, and the Improper Jurisdiction Class which predominate over any questions affecting only individual members of each class and, in fact, the wrongs alleged against the Defendant by the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members and the remedies sought by Named Plaintiff and the  Garnishment Class, the Lien Class, and the Improper Jurisdiction Class against the Defendant are identical, the only difference being the exact sum which each class member is entitled to receive. The common issues include, but are not limited to:

    a. Whether the Defendant is permitted a to claim any right to attempt to collect and actually collect post judgment collection costs in an amount in excess of those costs actually assessed in the cause at judgment from a Garnishment Class member;

    b. Whether the Defendant is permitted a to claim any right to attempt to collect and actually collect through a recorded Statement of Lien future, unknown sums that may be due from a Lien Class member for the purpose of debt collection activities on behalf of others;

    c. Whether the Defendant is permitted to sue the Improper Jurisdiction Class members in jurisdictions where they do not reside for the purpose of debt collection activities on behalf of others;

    d. Whether the Defendant may lawfully assess consumer accounts for collection costs in an amount in excess of those costs actually assessed in the cause at judgment in the State of Maryland;

e.  Whether the Defendant may lawfully collect upon Writs of Garnishment under the color of law in a Maryland state court in which they claim an amount of collection costs greater than those costs actually assessed in the case at judgment;

f.  Whether the Defendant may lawfully collect upon Statements of Lien under the color of law which are recorded in Maryland state courts in which it claims on behalf of others future, unknown sums due;

g.  Whether the Defendant's use of court forms to collect on a writ of garnishment in which it claims an amount of collection costs in excess of those costs actually assessed in the cause at judgment or recorded Statements of Liens seeking further, unknown sums due simulates legal or judicial process;

h.  Whether the Defendant disclosed to the Named Plaintiff and the Garnishment Class members and the Maryland Courts that the post-judgment collection costs were in excess of those costs actually assessed in the cause at judgment, or whether it purposefully omitted such material facts;

i.  Whether the Defendant disclosed to the Named Plaintiff and he Lien Class members and the Maryland Courts that it had no right to seek unknown, future sums due in recorded Statements of Lien, or whether it purposefully omitted such material facts;

j.   Whether the Defendant's concealment of the true facts, tolls any limitations period(s) applied to each class' claims;

k.   Whether the Defendant knowingly communicated false or misleading information to other persons in order to force the Named Plaintiffs and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members to pay sums not lawfully owed; and

l.   Whether the Defendant is permitted to continue to seek to collect post-judgment collection costs in excess of those costs actually assessed at the time of judgment from the Garnishment Class members.

71.   Named Plaintiff's legal and equitable claims are typical of and identical to each member of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class and will be based on the same legal and factual theories.

72.   The Defendant's defenses (which defenses are denied) would be typical of and identical for each member of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class and will be based on the same legal and factual theories.

73.   The Named Plaintiff will fairly and adequately represent and protect the interests of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members.

74.   Named Plaintiff has retained counsel experienced in consumer class actions including actions involving unlawful lending and debt collection practices.

75.   Named Plaintiff does not have any interests which might prevent her from vigorously prosecuting this action or that are otherwise antagonistic or adverse to the interests of the members of the Garnishment Class, the Lien Class, and the Improper

Jurisdiction Class.

76.    Certification of a Class under Md. Rule 20231(b)(2) and (b)(3) is appropriate as to the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of the  Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members' claims, and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

77.    Named Plaintiff's claims are typical of the claims of the  Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members.

78.    Named Plaintiff will fairly and adequately protect the interests of all the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members in the prosecution of this action. She is similarly situated with, and has suffered injuries similar to the members of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class she seeks to represent.  Named Plaintiff has been wronged, wishes to obtain redress of the wrong, and want the Defendant stopped from enriching itself and others via illegal activities or otherwise perpetrating similar wrongs on others.

79.    The Defendant may not benefit from its failure to properly and fully disclose the true facts known to them.  The Defendant's affirmative acts, including using official court forms and their status as collection professionals are factors that contributed to and delayed the  Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members' discovery of the true facts that the Defendant was seeking costs in an amount

greater than the costs actually assessed in the case at judgment or permitted under the law.

80.    The Named Plaintiff and members of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class were not required to assume that the Defendant was engaging in illegal activities with the aid and assistance of the courts.

81.    Any limitations period that may otherwise apply to claims of the Named Plaintiff and members of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class is equitably tolled since the Defendant had a duty to disclose material facts to the Named Plaintiff, the state court clerks, and the  Garnishment Class, the Lien Class, and the Improper Jurisdiction Class but failed to disclose truthful, material facts to each concerning the issues before the courts.

82.    The  Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members have suffered damages, losses, and harm similar those sustained by the Named Plaintiff as described above.

## COUNT I: DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### (Against the Defendant on Behalf of the Garnishment Class and the Lien Class)

83.    Named Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

84.    Named Plaintiffs seek a declaration that the Defendant is not entitled, directly or indirectly, as a matter of law to seek or collect costs in an amount greater than the costs actually assessed in a case at judgment against any member of the Garnishment Class.

85.    Named Plaintiff seeks a declaration that the Defendant's recorded Statements of Lien n behalf of others against any member of the Lien Class members seeking future,

unknown sums are void as a matter of law.

86.     Named Plaintiff also seeks a declaration that the Defendant may not, directly or indirectly threaten or actually utilize the assistance of any Maryland court to collect or attempt to collect costs in an amount greater than the costs actually assessed in a case at judgment against any member of the Garnishment Class and may not threaten to foreclose upon a Statement of Lien which asserts a right to collect future, unknown sums due from the Lien Class.

87.     The Defendant should be enjoined from attempting to collect any costs in an amount greater than the costs actually assessed in the case at judgment against any member of the Garnishment Class directly or indirectly.

88.     The Defendant should be enjoined from attempting to foreclosure or complete any foreclosure based upon a Statement of Lien which is void and purports to collect future, unknown sums.

        WHEREFORE, Named Plaintiff prays that this Court enter judgment in her favor and to:

        A.      Certify this case as a class action with the Named Plaintiff as the Class Representatives and her attorneys as counsel to represent the members in the Garnishment and Lien Class;

        B.      Order appropriate injunctive relief including a preliminary and permanent injunction against the Defendant to prevent further violations of law, and to prevent it from aiding or abetting, or providing benefits to any person who seeks to collect post-judgment costs in an amount greater than

the costs actually assessed in the cause at judgment or asserts a right to collect directly or indirectly future, unknown sums through a recorded Statement of Lien;

C.      Order and declare that as a matter of law that the Defendant and any person acting on its behalf, including its authorized agents and attorneys, may not collect directly or indirectly from Named Plaintiff or the Garnishment Class or Lien Class without the right to do so;

D.      Order and declare that the Defendants are not entitled to the assistance of any Maryland Court to collect any post-judgment costs in an amount greater than the costs actually assessed in the cause at judgment from any members of the Garnishment Class;

E.      Award reasonable attorneys' fees, litigation expenses and costs;

F.      Order other appropriate declaratory relief; and

G.      Provide such other or further relief as the Court deems appropriate.

## COUNT II: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, U.S.C. § 1692, *et seq.*
### (Against the Defendant on Behalf of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class)

89.      Named Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

90.      Defendant acquired its interest, to collect for another, in the Named Plaintiff's and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members' consumer accounts during a period in which it alleges (directly and indirectly) accounts were owed and unpaid and therefore it is a Debt Collector within the meaning of 15

U.S.C. § 1692a(6).

91.    By communicating with the Named Plaintiffs and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members directly and indirectly and threatening, attempting and/or actually (i) collecting collection costs in an amount greater than the costs actually assessed in the cases at judgment from the Garnishment Class members, (ii) cause Statements of Lien not authorized under Maryland law demanding future, unknown sums due from the Lien Class members, and (iii) suing the Improper Jurisdiction Class members in jurisdictions where they were domiciled, the Defendant used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiff and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members in violation of 15 U.S.C. § 1692e.

92.    The Defendant's actions described herein constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiffs and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members in violation of 15 U.S.C. § 1692f.

93.    By filing documents in court records throughout the State of Maryland indicating that they have a right to collect costs in an amount greater than the costs actually assessed in the cause at judgment from the Named Plaintiff and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members, the Defendant has used a communication in collecting or attempting to collect a debt which improperly implies that the government or a government agency has authorized the collection effort when the

government has not done so but instead accepted that Defendant would only seek to garnish or collect funds its client's were legally entitled to collect and only sue in jurisdictions where persons were actually domiciled, all in violation of 15 U.S.C. § 1692e(9).

94.     Named Plaintiff and t the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members have suffered actual economic and non-economic damages which are concrete injuries, as more fully described *supra* and have incurred attorney's fees and court costs as a result of the Defendant's illegal debt collection practices and direct and indirect actions described herein.

95.     The FDCPA provides for statutory damages in addition to actual damages.

WHEREFORE, Named Plaintiff prays that this Court enter judgment on the FDCPA claims in favor of them and the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class against N&Z and to:

A.     Certify this case as a class action with the Named Plaintiff as the Class Representative for the N&Z Class and her attorneys as counsel on behalf of the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class described herein;

B.     Award actual damages in an amount determined by the trier of fact in a sum in excess of $75,000 to the Garnishment Class, the Lien Class, and the Improper Jurisdiction Class members.

C.     Award statutory damages in the amount allowed by the FDCPA equal to a sum in excess of $75,000 to the Garnishment Class, the Lien Class, and

the Improper Jurisdiction Class members;

D.     Award reasonable attorney's fees, litigation expenses and costs; and

E.     Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
Email: phillip@marylandconsumer.com

*Counsel for the Plaintiffs and Putative
Classes Asserted Herein*

**Request for Jury Trial**

Plaintiff requests a jury trial on all claims asserted herein on her behalf and on behalf of the putative classes.

_____

Phillip Robinson