**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| SUZETTE ARCHIE, <br> OM SHARMA,        * <br>        Plaintiffs,        * <br> v.        *        Case No.: GJH-17-2524 <br> NAGLE & ZALLER, P.C.,        * <br>        Defendant.        * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In this putative class action, Plaintiffs Suzette Archie and Om Sharma have sued Defendant Nagle & Zaller, P.C. ("N&Z") for alleged violations of state and federal law. ECF No. 22. On behalf of two classes of plaintiffs, Archie and Sharma allege that N&Z is liable for filing Writs of Garnishment that impermissibly sought post-judgment enforcement costs (the "Garnishment Class"), and for filing Statements of Lien that included language improperly stating that the liens could increase or decrease in value (the "Lien Class"). Now pending before the Court is N&Z's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and Request for Hearing, ECF No. 25, and Plaintiffs' Motion for Class Certification, ECF No. 28. The Motions have been fully briefed, and the Court heard arguments from the parties regarding the Motion to Dismiss at a June 21, 2018 Motion Hearing. ECF No. 44. For the reasons that follow, Defendant's Motion to Dismiss is granted and the Plaintiffs' motions are denied.

## I. BACKGROUND[1]

On June 29, 2007, Plaintiff Om Sharma acquired his home located within Gabriel's Run, a neighborhood in Glenn Dale, Maryland. ECF No. 22 ¶¶ 47–48. On March 7, 2017, the Gabriel's Run Homeowners Association, represented by N&Z, sued Sharma in the District Court of Maryland for Prince George's County, for a sum of money related to Sharma's property. *Id.* ¶ 50. On June 23, 2017, the lawsuit was dismissed and the parties stipulated that Sharma owed Gabriel's Run $3,965.00 as of December 31, 2016. *Id.* ¶ 53. On July 11, 2017, N&Z filed a Statement of Lien against Sharma. *Id.* ¶ 54. This lien claimed the right to collect $3,099.30 from Dr. Sharma, including "$379 for costs of collection and $900 for attorney fees." *Id.* ¶ 57. The lien also claimed the right to obtain "additional fines, late fees, interest, costs of collection and attorney's fees actually incurred, if any, as permitted by the Association's governing documents, that may come due after the date this lien was drafted. Said amount may increase or decrease . . . ." *Id.* ¶ 58.

Separately, on May 22, 2012, the Holly Hill Homeowners Association obtained a consent judgment against Plaintiff Suzette Archie,[2] and was awarded $83 in costs. *Id.* ¶ 69. Neither Holly Hill nor N&Z requested the right to petition the state court for future collection costs. *Id.* ¶ 70. On September 2, 2016, N&Z submitted a request for a Writ of Garnishment of Wages, and sought $118 in costs ($35 more than it was initially awarded). *Id.* ¶ 71. On June 13, 2016, N&Z filed two Statements of Lien against Archie's property. *Id.* ¶ 78. These liens contained the same language as was included in Sharma's liens regarding "additional" costs that may "increase or decrease." *Id.* ¶ 82.

---

[1] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff.
[2] The total judgment was $19,013.46. ECF No. 22 ¶ 69.

On June 14, 2017, Plaintiff Archie filed a Class Action Complaint & Demand For Jury Trial in the Circuit Court for Montgomery County, ECF No. 2, which she subsequently amended, ECF No. 9. On August 31, 2017, the case was removed to this Court. ECF No. 10. Following the filing of a Motion to Dismiss by N&Z, ECF No. 17, Archie amended her Complaint again on October 5, 2017, ECF No. 22. In this Second Amended Class Action Complaint, Archie added Sharma as an additional named Plaintiff. Plaintiffs seek to establish two classes: the "Garnishment Class," which would include Maryland residents against whom N&Z has filed a Writ of Garnishment in the last three years to seek costs greater than the costs actually assessed by a judgment; and the "Lien Class," which would include Maryland residents against whom N&Z has filed a lien in the last three years and asserted a right for "unknown, future sums, other than interest . . . ." *Id.* ¶¶ 103, 105. The putative classes assert four Counts for: Declaratory Judgment and Injunctive Relief (Count I); Violation of the FDCPA (Count II); Violation of the Maryland Consumer Debt Collection Act (Count III); and Injurious Falsehood — Disparagement of Title (Count IV).

On October 19, 2017, Defendant filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and Request for Hearing.[3] ECF No. 25. Plaintiffs subsequently filed a Motion for Class Certification on November 12, 2017. ECF No. 28. The next day, November 13, 2017, Plaintiffs submitted a filing which included a Cross Motion For Partial Summary Judgment, an Opposition to Defendant's Motion to Dismiss, and a Motion to Strike/Disregard Defendant's Memorandum of Law in Violation of Local Rule 105(3). ECF No. 29. These

---

[3] The Memorandum in support of this Motion was 50 pages long, in violation of Local Rule 105(3). On November 14, 2017, the day after Plaintiffs moved to strike the excess pages (and nearly a month after originally filing the Motion), Defendant filed a Motion For Leave To Exceed Page Limit Pursuant To Local Rule 105.3. ECF No. 30. At the June 21, 2018 hearing, the Court explained that the Memorandum was in violation of Local Rule 105(3), but that given the time that had elapsed since the filing of the Memorandum, the Court would excuse Defendant's violation and consider all 50 pages. Thus, Defendant's Motion is granted, and Plaintiff's Motion to Strike is denied..

Motions have been fully briefed, and the Court heard arguments from the parties at a June 21, 2018 Motion Hearing. *See* ECF Nos. 34, 35, 39, 40, 44.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendant's Motion is styled as a Motion to Dismiss or, Alternatively, for Summary Judgment. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving

party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Here, there is little dispute over the relevant facts of this case. *See* ECF No. 29 at 6.[4] Thus, the Court examines whether either party is entitled to judgment as a matter of law on the basis of the facts presented by the parties.

## III. DISCUSSION

### A. FDCPA Claims

Plaintiffs allege that Defendant's conduct violates § 1692 of the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692e and 1692f. *See* ECF No. 22 at 36–37.

Section 1692e of the FDCPA prohibits a "debt collector" from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This specifically includes "[t]he false representation of . . . the character, amount, or legal status of any debt," *id.* § 1692e(2), as well as the use of a "written communication which

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

6

simulates or is falsely represented to be a document authorized, issued, or approved by any court . . . or which creates a false impression as to its source, authorization, or approval," *id.* § 1692e(9). "Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer.'" *Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119, 126 (4th Cir. 2014) (internal quotation marks omitted). When viewing a misstatement from the perspective of the "least sophisticated consumer," courts should "consider how a naive consumer would interpret the statement." *Elyazidi v. SunTrust Bank,* 780 F.3d 227, 234 (4th Cir. 2015) (internal quotation marks omitted). A misstatement must be material to sustain a claim under 15 U.S.C. § 1692e; that is, the misstatement must have the potential to "frustrate [the least sophisticated] consumer's ability to intelligently choose his or her response," *id.* (internal quotation marks omitted), or must be the type of misstatement that "would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt," *Powell,* 782 F.3d at 127 (emphasis in original). For example, "a de minimis misstatement of the total amount owed might not be actionable . . . ." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014). Although the Fourth Circuit has not specified the exact severity of misstatement that is "material," misstatements of 50% and 10% have both been found to be material. *See Powell*, 782 F.3d at 127 ("This overstatement—more than 50 percent—was material under any standard."); *Conteh v. Shamrock Comm'y Ass'n, Inc.*, 648 Fed. App'x 377, 380 (4th Cir. 2016) ("[A]n overstatement of 10.4% is sufficient to be important to how the least sophisticated consumer responds . . . .").

Section 1692f of the FDCPA prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the

principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

In their Second Amended Complaint, Plaintiffs allege that Defendant violated the FDCPA by attempting to "collect[] costs in an amount greater than the costs actually assessed in the cases at judgment from the Garnishment Class members" and by "threatening to record or actually record multiple Statements of Lien not authorized under Maryland law demanding future, unknown sums due from the Lien Class members." ECF No. 22 ¶ 134. They further specifically allege that Defendant's practice of "filing documents in court records" "improperly implies that the government . . . has authorized the collection effort when the government has not done so" in violation of § 1692e(9). *Id.* ¶ 136. The Court addresses the Garnishment Class and Lien Class FDCPA claims in turn.

### i. Garnishment Class Claims

First, the Court examines the Garnishment Class's claim that Defendant's attempt to collect post-judgment enforcement costs violates the FDCPA. Defendant, representing Holly Hill, obtained a judgment against Archie for $19,013.46 and was awarded $83 in costs, for a total of $19,096.46. ECF No. 22 ¶ 69. On September 2, 2016, Defendant requested from the Clerk that a Writ of Garnishment issue against Archie and sought $118 in costs, an increase of $35 from the costs initially awarded.[5] The cost of the Writ was $10, ECF No. 22 ¶ 69, and Defendant had also incurred costs for a Request for Oral Exam ($10) and a Notice of Lien ($15). ECF No. 25-1 at 16. The parties do not dispute that Defendant actually incurred these costs. The Garnishment Class alleges that this practice violated the FDCPA by falsely representing the amount which was due, and by improperly implying that the government had authorized the collection.

---

[5] This increase amounts to a variance of 0.18% of the initial amount awarded (including costs), and 0.13% of the initial amount awarded plus post-judgment interest and attorney's fees (a total of $26,185.59).

Because Defendant was permitted to collect its post-enforcement collection costs in applying for the Writ of Garnishment, this practice did not violate the FDCPA as the additional $35 was properly owed and not a false representation. Judgment creditors may enforce judgments as authorized by the Maryland Rules or by statute. MD Rules, Rule 3-631. Maryland Rule 3-603 provides that "[u]nless otherwise provided by rule, law, or order of court, the prevailing party is entitled to the allowance of costs." Judgment creditors may file a Notice of Lien of Judgment pursuant to Rule 3-621, and may request that the Court issue an order requiring the appearance of the debtor for oral examination pursuant to Rule 3-633(b). Maryland Rule 3-646 allows a judgment creditor to obtain issuance of a writ of garnishment by filing a request in the same action in which the judgment was obtained. The Maryland court system has established form DC-CV-065 for judgment creditors to fill out and submit to the court clerk when requesting a writ of garnishment. ECF No. 25-3. This form asks the judgment creditor to list separately the "Original amount of judgment (excluding costs and attorney's fees)" and the "court costs due, including this Writ," along with the "attorney's fees awarded by the court." *Id.* The form has a blank space next to each of these categories.

Here, on the line next to "court costs due, including this Writ," Defendant put "118.00." *Id.* at 1. At the June 21, 2018 hearing, the parties agreed that this form was reviewed and approved by the court clerk prior to a writ of garnishment being actually issued. Thus, in executing the Writ of Garnishment form as instructed by the Maryland courts, Defendant acted lawfully in seeking its post-judgment enforcement costs.

Even if Maryland law did not permit the collection of post-judgment enforcement costs, however, the Court concludes that any false representation in the amount listed on the Writ of Garnishment was not material. Depending on how it is calculated, the amount that the

9

Garnishment Class complains of, the additional $35, is a mere 0.18% or 0.13% of the total judgment. *See supra* n. 5. Even if falsely claimed, this variation is clearly a *de minimis* misstatement, and would not impact the least sophisticated consumer's actions. *See Powell*, 782 F.3d at 126 (observing that "a *de minimis* misstatement of the total amount owed might not be actionable"); *Dudley v. Focused Recovery Solutions, Inc.*, No. 17-cv-10, 2017 WL 2981345, at *4 n. 5 (E.D. Va. July 12, 2017) (finding that understatements of 3.6% and 8.4% were *de minimis* misstatements, would not "frustrate a consumer's ability to intelligently choose his or her response," and were immaterial (quoting *Powell*, 782 F.3d at 126)). Thus, Plaintiffs' Amended Complaint fails to state a claim on behalf of the Garnishment Class alleging that Defendant violated the FDCPA.[6]

### ii. Lien Class Claims

Second, the Court examines the Lien Class's claim that Defendant's "threatening to record . . . multiple Statements of Lien not authorized under Maryland law demanding future, unknown sums due from the Lien Class members" constituted "false, deceptive, or misleading representations" or "unfair or unconscionable means" in violation of §§ 1692e and 1692f. ECF No. 22 ¶¶ 134–35 Defendant filed liens against Sharma and Archie that contained language indicating that the liens were continuing liens, and that they potentially covered future amounts. The liens against Sharma and Archie stated that:

> The total amount due to satisfy this lien shall include additional fines, late fees, interest, costs of collection and attorney's fees actually incurred, if any, as permitted by the Association's governing documents, that may come due after the date this lien was drafted. Said amount may increase or decrease to account for intervening payments of

---

[6] Plaintiffs' allegation that Defendant's use of a Writ of Garnishment violates § 1692e(9) is similarly not persuasive. That part of the FDCPA prohibits the use of a written communication "which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." The parties agree that the Request for Writ of Garnishment form is an official court document, which was reviewed and signed by the court clerk. Thus, this document does not "simulate[]" or "falsely represent[]" that it is authorized by a court; the document is authorized by a court, and thus does not violate § 1692e(9).

10

some or all of the balance secured by this Statement of Lien, or due to judgments obtained against the above-named owner(s) for the same.

ECF No. 22 ¶¶ 58, 82. For ease of reference, the Court refers to the above language as the "continuing lien clause." The Lien Class alleges that by filing a lien that asserted "unknown future sums," Defendant violated the MCLA and FDCPA.

As an initial matter, the Court notes that Plaintiff Archie's FDCPA claims regarding the Statements of Liens filed against her are time-barred. The FDCPA imposes a one-year statute of limitations. 15 U.S.C. § 1692k(d). Where a plaintiff challenges the filing of a lien, the limitations period begins "at the time the lien was placed on Plaintiff's property, since this was the definitive action taken by Defendants that is alleged to constitute an abusive debt collection practice." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012). Here, the liens filed against Archie were recorded on June 13, 2016, ECF Nos. 25-4 & 25-5, yet the Complaint was not filed until June 14, 2017, ECF No. 1. Thus, Archie's FDCPA claims are time-barred.[7]

Sharma's similar claim is not time-barred but still fails because the inclusion of the continuing lien clause does not constitute a violation of the FDCPA. The MCLA does not expressly permit or prohibit a judgment creditor from filing a "continuing lien" whose amount may increase or decrease. If the Court were to interpret the MCLA as in fact prohibiting such liens, creditors would need to file a new lien every day to account for additional accrued interest, and every time the debtor made a payment on the debt to account for such credits. Such an

---

[7] Plaintiffs did not respond to this argument in their briefing, and thus they have arguably abandoned the Archie FDCPA claim. *See Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."). At the Motion Hearing, however, Plaintiffs for the first time argued that while the Archie Lien was recorded on June 13, 2016, it was not received by Plaintiffs until June 29, 2016, and thus the statute of limitations did not begin to run until Plaintiffs had actual notice of the lien. Plaintiffs did not direct the Court to any legal precedent that supported this proposition. In fact, several courts have concluded that the statute of limitations begins to run when a lien is placed on a plaintiff's property, regardless of when the plaintiff had actual notice of the lien. *See Fontell*, 870 F. Supp. 2d at 404; *Stennett v. Midland Funding, LLC*, No. 16-656, 2017 WL 1205589, at *2 (W.D. Ky. March 30, 2017); *Osinubepi-Alao v. Plainview Financial Services, Ltd.*, 44 F. Supp. 3d 84, 91 (D.D.C. 2014).

interpretation of the MCLA would be "bizarre [and] idiosyncratic," and not tenable. *Elyazidi*, 780 F.3d at 234.

Furthermore, the continuing lien clause was a fair and accurate representation of the housing association's rights to collect additional sums from Plaintiffs. Holly Hill's and Gabriel's Run's governing documents each authorize the housing associations to file continuing liens against homeowners who fail to comply with provisions of the housing associations' governing documents. ECF No. 25-9 at 57; ECF No. 25-10 at 13. Additionally, the documents permit the housing associations to recover interest, costs and expenses of collection or enforcement actions, and attorney's fees. ECF No. 25-9 at 14, 57; ECF No. 25-10 at 17. Plaintiffs argue that property owners cannot predict the "future, unknown sums," and that they are deprived of their due process. ECF No. 29 at 26–27. However, the continuing lien clauses specifically reference that any future sums are only those that are "permitted by the Association's governing documents." Thus, property owners are on notice that the amount of the lien may change as established by the housing organization's governing documents, and may predict exactly what those costs may be. By filing liens with the continuing lien clauses, Defendant was pursuing its clients' contractual rights in a way that was not proscribed by the MCLA; such conduct is not a violation of the FDCPA.[8] *See Elyazidi*, 780 F.3d at 234 ("where the debt collector sought no more than applicable law allowed and explained via affidavit that the figure was merely an estimate of an amount counsel expected to earn in the course of the litigation, the representations cannot be considered misleading").

---

[8] Plaintiffs cite Real Prop. § 14-204 of the Maryland Contract Lien Act in support of their argument. ECF No. 29 at 26. This section provides that a homeowners association may only foreclose on a lien if that lien "[d]o[es] not include fines imposed by the governing body or attorney's fees or costs related to recovering the fines." Md. Real Prop. § 14-204(d)(2)(ii). However, this section further clarifies that it "does not preclude a governing body from using any other means to enforce a lien against a unit owner or lot owner." *Id.* § 14-204(d)(3). Thus, this section would seem to anticipate that homeowners associations may permissibly include fines or costs in a lien, but they may not foreclose on the lien.

### B. Remaining claims

Having disposed of Plaintiffs' FDCPA claim (Count II), the remaining Counts assert claims for Declaratory Judgment and Injunctive Relief (Count I), Violation of the Maryland Consumer Debt Collection Act ("MCDCA") (Count III), and Injurious Falsehood — Disparagement of Title (Count IV).

Regarding Count I, the Court notes that declaratory and injunctive relief is not available under the FDCPA or the MCDCA. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 733 (D. Md. 2011).

Regarding Counts III and IV, the Court notes that these are state law causes of action, over which, having dismissed the FDCPA claims, the Court does not have jurisdiction unless it exercises supplemental jurisdiction. The Fourth Circuit has held that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." Having dismissed the FDCPA claims, no federal claims remain; thus, the court declines to exercise supplemental jurisdiction over the remaining claims, which will be dismissed without prejudice. *See e.g., Ramsay v. Sawyer Property Management of Md., LLC*, 948 F. Supp. 2d 525, 536–37 (D. Md. 2013) (declining to exercise supplemental jurisdiction over plaintiff's MCDCA and MCPA claims after dismissing FDCPA claims, and dismissing state claims without prejudice); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) ("Because the court will dismiss the

claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims," and dismissing without prejudice).

## IV.  CONCLUSION

For the foregoing reasons, N&Z's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and Request for Hearing, ECF No. 25, is granted, and Plaintiffs' Motion for Class Certification is denied.

Date: July  19 , 2018              /s/
                                   GEORGE J. HAZEL
                                   United States District Judge